# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8844 | **DATE** | 12/17/2002 |
| **CASE TITLE** | Mosley vs. Hardy | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Hardy's motion to dismiss is denied [#17-1]. Defendant Barten's motion to dismiss is denied in part and granted in part [#21-1]: Darren's claims against Barten are dismissed; Louis Mosley's claim against Barten that the search of his person violated the Fourth Amendment survives the motion. Plaintiffs are directed by January 10, 2003 to file an amended complaint reflecting these rulings (all issues are hereby preserved for appeal). Defendants shall answer by January 31, 2003. A scheduling conference will be held on February 11, 2003 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 1 8 2002 date docketed | |
| | Notified counsel by telephone. | | | 27 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/17/2002 date mailed notice | |
| MD | courtroom deputy's initials | 02 DEC 17 PM 4:04 Date/time received in central Clerk's Office | MD mailing deputy initials | |


DARREN MOSLEY and LOUIS MOSLEY, )
)
Plaintiffs, )
)
vs. ) No. 01 C 8844
) Judge Joan H. Lefkow
HERBERT HARDY, )
in his individual capacity, and )
JASON BARTEN, )
in his individual capacity, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Darren Mosley ("Darren") and Louis Mosley ("Louis"), filed a first amended complaint pursuant to 42 U.S.C. §§ 1983 and 1988, alleging defendants, Herbert Hardy ("Hardy"), a police officer and special agent with the Illinois State Police, and Jason Barten ("Barten"), a police officer with the Village of Shorewood, Illinois, each in their individual capacity, infringed on plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. Jurisdiction is properly invoked under 28 U.S.C. §§ 1331 and 1343. Defendants separately move to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, Hardy's motion is denied and Barten's motion is denied in part and granted in part.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the

1

27

sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## FACTS

According to plaintiffs' first amended complaint, taken as true for the purpose of these motions, on November 7, 2001, Darren and Louis were traveling in Darren's car southbound on Interstate 55. Hardy followed plaintiffs for a long stretch of time before eventually pulling them over. Although plaintiffs were not committing any crimes, Hardy informed Darren, the driver, that there was a windshield obstruction. Plaintiffs admit there was a small air freshener hanging from the car's mirror.

Darren began to question the stop, but Hardy told Darren to get into Hardy's police car. Darren complied and Hardy ran Darren's personal information through the police computer. Hardy also had Louis, the passenger, get into his police car and ran Louis' personal information through the police computer. After finishing his check on plaintiffs, Hardy issued a traffic warning to Darren and informed Darren that he was free to go.

As plaintiffs prepared to leave, Hardy asked Darren if he could search Darren's car for drugs. Darren refused because "he was late and being held unnecessarily." (Am. Compl. ¶ 17.)

Hardy then ordered Darren to sit down and told Darren that if he did not agree to the search, then he would be held at the scene until additional officers and a drug-sniffing police dog ("drug dog") arrived. Darren reluctantly agreed that Hardy could search his car as long as he would then be allowed to leave. Despite Darren's consent, additional officers including Barten and a drug dog arrived at the "scene." Defendants and the drug dog searched Darren's car. Although nothing was found, Barten searched the car a second time.

Defendants also asked plaintiffs if they had anything illegal on them. Defendants then searched Darren, including his pockets and shoes. Defendants searched Louis in the same way but also had Louis partially drop his pants.

On or about November 16, 2001, plaintiffs filed the instant action, alleging defendants violated their Fourth Amendment rights. As a result of defendants' actions, plaintiffs allege they now suffer fear, anxiety and emotional distress.

## DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Supreme Court has held that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment" such that a traffic stop found to be "unreasonable" in light of the surrounding circumstances will violate the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A traffic stop, however, is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* at 810.

Defendants argue that they are entitled to dismissal of plaintiffs' claims. Hardy asserts that the initial traffic stop as well as the ensuing detention and searches of plaintiffs' persons were permissible because he had probable cause to believe that plaintiffs were violating a traffic law and, further, that the car search was legal because he had Darren's consent. Hardy also asserts that he is entitled to qualified immunity. Barten asserts that he is not liable for any violation of plaintiffs' Fourth Amendment rights because he was merely relying on information provided by Hardy. Barten also asserts that he is entitled to qualified immunity.

A.     **Hardy**

Plaintiffs argue that Hardy's traffic stop was an unreasonable seizure under the Fourth Amendment because they were not "committing a crime or breaking any laws." (Am. Compl. ¶ 9.) Nonetheless, plaintiffs admit that they had an air freshener hanging from the car's mirror. (*Id.* ¶ 11); *see City Nat'l Bank of Fl.* v. *Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (The court is not required "to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law" (internal citations and quotations omitted)). The Illinois Vehicle Code provides that "[n]o person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield . . . which materially obstructs the driver's view." 625 ILCS 5/12-503(c). In a criminal case with similar facts, the court in *United States* v. *Smith*, 80 F.3d 215, 219-20 (7th Cir. 1996), denied the defendant's motion to suppress incriminating evidence uncovered from a traffic stop where the police officer had probable cause under the Fourth Amendment to stop the car because there was an air freshener hanging from the car's mirror in violation of 625 ILCS 5/12-503(c). Based on

the court's decision in *Smith*, Hardy had probable cause to stop plaintiffs for a traffic violation.[1] As such, the presence of probable cause in this case makes the initial traffic stop reasonable under Fourth Amendment doctrine.

*1.    Hardy's continued detention of plaintiffs and search on their persons*

The issue presented here is whether, once the officers issued the ticket and told Darren that plaintiffs could go, the ensuing searches of the car and plaintiffs' persons violated the Fourth Amendment.[2] Hardy relies on *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002), for the proposition that a traffic stop inheres with the possibility of custodial arrest and prosecution; thus, plaintiffs have no cause to complain about the search. Not addressing *Childs*, plaintiffs respond that the cases cited by Hardy are distinguishable because during the questioning of the plaintiff (or the defendant in a criminal case) reasonable suspicion (or probable cause) of another offense beyond the traffic stop developed in response to the questions, whereas here there was never such suspicion. *E.g., Valance v. Wisel*, 110 F.3d 1269, 1276-77 (7th Cir. 1997) (police officers had probable cause to continue to detain the plaintiff after giving the plaintiff a traffic warning because they saw what appeared to be a Colt Python .357 handgun and the plaintiff was

---

[1] Plaintiffs argue that Hardy "was motivated by race to pull them over." (Pl. Resp. at 4.) "Ulterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996). Plaintiffs' argument, therefore, that the initial traffic stop was impermissible solely because the windshield obstruction was a pretext is unavailing.

[2] In *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002), a criminal case, the police officers had probable cause to seize the defendant-car passenger because he was not wearing a seat belt in violation of 625 ILCS 5/12-603.1(a). Here, there are no facts alleged that show Louis was committing any traffic violations. Notwithstanding this fact, Hardy could initially detain Louis because "as a passenger in a car stopped for a traffic offense, [Louis] was at all events subject to [Hardy's] control and direction until [Hardy's] safety could be assured." *Childs*, 277 F.3d at 949. Nevertheless, there are no facts alleged to show that Hardy's reliance on probable cause to continue to detain Darren after he issued the traffic warning to Darren allowed him to continue to detain Louis and subject Louis to a search of his person.

5

a convicted felon and considered dangerous).

In *Childs*, the court held that a person who is in custody on a traffic stop may be questioned about things unrelated to the reason for the stop. The court stated,

> ... The reasonableness of a seizure depends on what the police *do*, not on what they might have done. The point, rather, is that cases such as *Atwater* [v. *City of Lago Vista*, 532 U.S. 318 (2001)] and [*County of Riverside* v.] *McLaughlin*[, 500 U.S. 44 (1991)] show that the fourth amendment does not require the release of a person arrested on probable cause at the earliest moment that step can be accomplished. What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public--for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

277 F.3d at 953-54. *Childs* does not hold, however, that once an officer releases a person he has the right to search without probable cause or to extend the detention to coerce consent to search. In *Valance*, which was decided before *Childs* but is still good law, although the court affirmed the lower court's grant of summary judgment in favor of the defendant police officers, it recognized that "even a lawful traffic stop could develop into an unreasonable seizure if [the police officers] detained [the plaintiff] without his consent after the purpose of the stop was completed, so long as nothing occurred in the course of the stop to give the officers the reasonable suspicion needed to support further detention." *Id.*

In order to reconcile *Valance* with *Childs*, this court concludes that Hardy violated plaintiffs' Fourth Amendment rights when he demanded that plaintiffs remain at the scene to wait for additional officers and a drug dog to conduct a drug search, where (a) Hardy had already decided not to take plaintiffs into the station house for booking on the traffic violation and, in

6

fact, had told Darren he could leave, and (b) nothing occurred during the ensuing conversation to support any suspicion of wrongdoing.

2.  *Hardy's search of Darren's car*

Regarding the search of Darren's car, Hardy contends that the search was permissible under the Fourth Amendment because he had Darren's valid consent. Because the arguments raised by the parties here are the same arguments raised according to whether Hardy is entitled to the defense of qualified immunity, the court will come back to this issue later.

3.  *Hardy's defense of qualified immunity*

Even if Hardy violated plaintiffs' Fourth Amendment rights, Hardy argues he is entitled to the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As a threshold matter, a defendant who raises the defense of qualified immunity "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 707 (N.D. Ill. 2002), quoting *Pyka v. Vill. of Orland Park*, 906 F. Supp. 1196, 1216 (N.D. Ill. 1995). None of the parties dispute that Hardy's actions were undertaken in the performance of his duties and were within the scope of his authority as a police officer and special agent.

The court, therefore, next proceeds to the two-step inquiry outlined in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court considers whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

7

constitutional right?" *Id.* Second, the court considers "if a violation could be made out on a favorable view of the parties' submissions," then was the right "clearly established" at the time of the incident such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted[?]" *Id.* at 201-02.

With respect to this second step, the plaintiff bears the burden of demonstrating that there was a violation of a clearly established right. "To determine whether a right is clearly established, the court looks to Supreme Court and Seventh Circuit precedent." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). In the absence of controlling precedent, the court broadens its search to include all relevant case law to determine if there was "a clear trend" such that "the recognition of the right by a controlling precedent was merely a question of time." *Id.* The plaintiff need not bring forth a case where the exact action in question was previously held unlawful or that a prior case was "on all fours" with the facts and law in the plaintiff's case. *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957-58 (7th Cir. 1997) (internal citations and quotations omitted). Instead, "'[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established.'" *Id.* at 958, quoting *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988).

As discussed previously, Hardy's actions according to plaintiffs' allegations infringed on plaintiffs' Fourth Amendment rights. Thus, the court proceeds to the second step of the two-part inquiry, which is whether plaintiffs' rights were clearly established at the time of the violation. A warrantless search does not require probable cause if the officer has the party's voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 248-49 (1973). Whether consent to a search is voluntary or a product of express or implied duress or coercion is "a question of fact to

be determined from the totality of all the circumstances." *Id.* at 227. Nonetheless, a "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment." *Forman*, 104 F.3d at 957 (internal citations and quotations omitted).

Here, plaintiffs argue that Hardy's demand that Darren agree to search his car or wait for additional officers and a drug dog made Darren's consent invalid because it was under duress or coerced. *Cf. Florida v. Bostick*, 501 U.S. 429, 438 (1991) ("'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse"). The court, however, need not make this determination because even if Darren's consent was voluntary, it was a conditional consent to search. *See United States v. Dyer*, 784 F.2d 812, 816 (7th Cir. 1986) ("a person may limit or withdraw his consent to a search, and the police must honor such limitations."). Darren agreed that Hardy could search his car so long as Darren would not have to wait for additional officers and a drug dog to arrive for the drug search to be performed. The facts alleged show that Darren's condition was not honored and, therefore, the consent (at least to the second search of the car) was not valid. As such, Hardy is not entitled to qualified immunity at this time. Accordingly, Hardy's motion to dismiss will be denied.

**B.    Barten**

Barten asserts that he cannot be held liable under § 1983 because he did not personally participate in the initial stop of plaintiffs or play any role in obtaining Darren's consent to search the car. Furthermore, Barten claims that he had no reason to believe that the stop was not based

9

on probable cause or that the consent to search the car was invalid because he was only acting pursuant to information received from Hardy. Finally, Barten asserts that even if he violated the Fourth Amendment, he is entitled to the defense of qualified immunity.

Barten is not Hardy's supervisor nor was he present when Hardy detained plaintiffs after the initial stop. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (holding the sheriff liable in his official capacity under § 1983 for the constitutional deprivations by his deputies and stating an individual implicated in a § 1983 action cannot be held liable "unless he caused or participated in an alleged constitutional deprivation."). As such, Barten is not liable for the violation of plaintiffs' Fourth Amendment rights prior to his arrival at the scene. And, because plaintiffs allege that Darren had consented by the time Barten arrived, there is no basis for holding Barten responsible for Hardy's alleged deprivation of plaintiffs' rights by coercing the consent. Plaintiffs' argument, then, that "Barten should have been aware that this time period [for holding plaintiffs for a traffic violation] could hardly be considered reasonable and necessary considering the nature of the warnings [Hardy] issued" to plaintiffs is irrelevant. (Pl. Resp. at 5.) Further, they cite no legal authority pointing to a conclusion that Barten's actions in relying on Hardy's word that Darren consented was unreasonable under the Fourth Amendment.[3] With

---

[3]Plaintiffs hardly cite any legal authority in their brief. They do, however, rely on *Moore v. The Marketplace, Inc.*, 754 F.2d 1336, 1345-47 (7th Cir. 1985), in responding to Barten's assertion that he is entitled to qualified immunity, for the language that "before 'invoking the awesome power of arrest and detention,' a police officer has a duty to conduct a thorough investigation and to use reasonable judgment and common sense." (Pl. Resp. at 7-8.) In *Moore*, the court reversed the lower court's grant of summary judgment in favor of the defendant-police officers where the plaintiffs were arrested and imprisoned following a dispute with a restaurant owner over an unpaid bill. The Seventh Circuit noted that the incident could have been avoided had the arresting officers conducted a proper investigation and attempted to resolve the dispute between the plaintiffs and the restaurant owner. Unlike in *Moore*, however, Barten was not an arresting officer, but rather he was participating in a search premised on a reasonable belief obtained through Hardy that Darren had consented to a search of the car. The court believes the facts are sufficiently distinguishable that *Moore* has little persuasive force.

respect to the search of plaintiffs' persons, plaintiffs did not consent to such a search, there was no probable cause, and so Barten was limited to a pat-down for the purpose of protecting Hardy's and his safety. *See Childs*, 277 F.3d at 952 ("[A] person stopped on probable cause may be searched fully, while a person stopped on reasonable suspicion may be patted down but not searched"). Barten argues that he could perform a protective pat-down search of plaintiffs, which argument is in accordance with *Terry v. Ohio*, 392 U.S. 1, 20 (1968), and *Childs*. (Def. Mem. at 4.) Plaintiffs do not cite legal authority that shows Barten could not perform a protective pat-down search of Darren and Louis in anticipation of what, to Barten, was to be a consensual search. Regarding the search of Louis, however, more than a protective pat-down occurred; rather, Barten required Louis to have to partially drop his pants on Interstate 55, an action which he does not contend was necessary for his own protection (and was likely a search for contraband). *Accord, Kraushaar v. Flanigan*, 45 F.3d 1040, 1054 (7th Cir. 1995) ("A traffic arrest normally will not present the type of danger that would justify a strip search at the scene"). Further, Barten's claim to qualified immunity cannot be granted based on the complaint. Based on the facts alleged, it is clearly established that no reasonable officer in Barten's position would subject a passenger of a car to removing his pants in public during a pat down. *Id.* at 1054 n.7 ("[T]here are several cases which suggest that qualified immunity would not exist for a strip search conducted in public view[,]" citing, *inter alia, Logan v. Shealy*, 660 F.2d 1007, 1013-14 (4th Cir. 1981)). For these reasons, Barten's motion to dismiss will be granted as to Darren's claim and will be denied as to Louis's claim that the search on his person was unreasonable.

11

**ORDER**

Hardy's motion to dismiss is denied [#17-1]. Barten's motion to dismiss is denied in part and granted in part [#21-1]: Darren's claims against Barten are dismissed; Louis' claim against Barten that the search of his person violated the Fourth Amendment survives the motion. Plaintiffs are directed by January 10, 2003 to file an amended complaint reflecting these rulings (all issues are hereby preserved for appeal). Defendants shall answer by January 31, 2003. A scheduling conference will be held on February 11, 2003 at 9:30 a.m.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 17, 2002